UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MICHAEL STEVENS,

      Plaintiff,      Case No. 1:13-cv-918

v.              Honorable Robert Holmes Bell

CRAIG HUTCHINSON et al.,

      Defendants.
_____/

## OPINION

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Kenneth McKee and (Unknown) Finco and the Court will dismiss Plaintiff's third claim for relief for violation of the Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a) (hereinafter "RA"), and the Americans with Disabilities Act of 1990, § 202, 42 U.S.C.A. § 12132 (hereinafter "ADA"). The Court will

serve the complaint against Defendants Craig Hutchinson, Corizon, Daniel Heyns, Unknown Party #1, Gail Burke, and Unknown Party #2.

**Discussion**

I.  Factual allegations

Plaintiff James Michael Stevens is a state prisoner presently incarcerated at the Bellamy Creek Correctional Facility (IBC). He sues the following: the Michigan Department of Corrections (MDOC); MDOC Director of Infectious Diseases Craig Hutchinson; Corizon; MDOC Director Daniel Heyns; IBC Warden Kenneth McKee; Unknown Party #1 described as the MDOC Medical Director; Gail Burke, M.D.; Unknown Party #2 described as the MDOC Bureau of Health Care Services (BHCS) Chief Medical Officer; MDOC Deputy Director of Correctional Facilities Administration (Unknown) Finco.

The essence of Plaintiff's complaint is that he is deliberately being denied necessary treatment for his chronic Hepatitis-C (HCV) infection. Specifically, Plaintiff alleges that he was diagnosed with HCV in 2001. In August 2010, he was treated with Pegylated Interferon and Ribavirin. He had an initial positive response to the treatment, but the response was not sustained following completion of treatment.

In late 2011, Plaintiff was advised by Defendant Hutchinson that a newer, more effective HCV treatment had been approved by the FDA and that the MDOC, the BHCS and Corizon would be approving this treatment shortly. Plaintiff alleges that Defendant Hutchinson told him that he would be at the top of the list for treatment because he suffered from cirrhosis of the liver but had responded well to the first round of treatment.

Once the new HCV treatment was approved for use within the MDOC, Plaintiff was

placed on the waiting list for treatment. Plaintiff alleges that Defendant Hutchinson advised him that the new HCV treatment was only being offered at the Carson City Correctional Facility and would only be available to 10-15 prisoners at a time. According to Plaintiff, the new HCV treatment takes 48 weeks to complete. Thus, Plaintiff alleges, the Defendants are "bottle-necking" access to the medically necessary treatment by enacting policies and practices that limit the number of facilities offering the treatment and limit the number of prisoners being treated. Plaintiff alleges that Defendants' actions are not based on medical considerations, but expense. Plaintiff further alleges that Defendants' deliberate denial of necessary medical treatment raises a substantial risk of further serious injury or death.

On or about October 2, 2012, Defendant Hutchinson informed Plaintiff that he was 43rd on the waiting list for treatment and had an approximately 4-6 month wait. Later, on or about January 11, 2013, Defendant Hutchinson advised Plaintiff that he was now 96th on the waiting list and had an approximately 6-9 month wait for treatment. Plaintiff alleges that a prisoners' placement on the waiting list is determined based on the results of liver enzyme scores (ALT/AST) from blood tests and does not take cirrhosis of the liver into consideration. Plaintiff alleges that liver enzyme scores are not reliable indicators of the extent of liver damage, which according to Plaintiff, requires a biopsy.

In July, 2013, Defendant Hutchinson failed to conduct a scheduled 6 month follow-up with Plaintiff. Plaintiff alleges that his attempts to obtain information about the status of his HCV treatment have been "stone-walled" by BHCS staff.

Plaintiff alleges the following three claims for relief: (1) an Eighth Amendment claim against medical providers for medical deliberate indifference; (2) an Eighth Amendment claim

against MDOC policymakers for adopting customs, policies and practices the execution of which deliberately deny necessary medical care; and (3) a claim against the MDOC under the RA and ADA for discriminatory denial of access to services. Plaintiff alleges that he has exhausted his administrative remedies. Plaintiff seeks injunctive relief in the form of an order of the Court directing the Defendants to provide Plaintiff with the new HCV treatment, compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

4

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Finco and McKee

Plaintiff fails to make specific factual allegations against Defendants McKee and Finco. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569 at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).

Plaintiff fails to even mention Defendants McKee and Finco in the body of his

5

complaint. His allegations against Defendants McKee and Finco therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Indeed, it is entirely unclear why Plaintiff named these two Defendants. Defendant McKee is the Warden at IBC. Defendant Finco is the MDOC's Deputy Director of Correctional Facilities Administration, which does not include supervision of the BHCS.[1] Neither Defendant would have authority to make health care decisions with respect to Plaintiff personally nor would they be involved in MDOC health care policymaking. Accordingly, Plaintiff fails to state a claim against Defendants McKee and Finco.

### B. Third Claim for Relief

In his third claim for relief Plaintiff alleges that Defendants violated the RA and ADA. Specifically, Plaintiff alleges that his HCV and cirrhosis of the liver are qualifying disabilities

---

[1]    CORRECTIONAL FACILITIES ADMINISTRATION (CFA)

CFA is headed by a Deputy Director who reports to the Chief Deputy Director. The CFA Deputy Director is responsible for the operation of all correctional institutions operated by the Department and supervises the following:

Regional Prison Administrators, who are responsible for oversight of CFA institutions within geographic regions as determined by the CFA Deputy Director. Each CFA institution is administered by a Warden, who reports to a Regional Prison Administrator. The Warden is responsible for the overall operation of the institution.

The Operations Division, which is responsible for providing programming support to CFA institutions. Included in the Division are the following:

The Office of Employment Readiness, the Central Records Section, the Classification and Placement Section, the Emergency Management Section, the Food Service Section, the Offender Reentry Section, the Transportation Section, the Performance Audit Coordinator, the Special Activities Coordinator the Absconder Recovery Unit and the Department's Honor Guard Unit.

http://www.michigan.gov/corrections/0,4551,7-119-62761_62788-24147--,00.html (last visited September 3, 2013).

and that he is being denied the benefit of the new HCV treatment program because of his disabilities. Plaintiff further alleges that Defendants' conduct is discriminatory because placement on the new HCV treatment waiting list is based on the symptoms of HCV and, does not take into consideration the deterioration of the liver due to cirrhosis.

> Title II of the ADA provides
>
> . . . that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1). [The Supreme Court has] previously held that this term includes state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). Section 504 of the RA similarly protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a). Thus, to state a claim under the ADA or RA, a plaintiff must show that he is "(1) disabled under the statute, (2) otherwise qualified for participation in the program, [services or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under[,] the program, [services, or activities] by reason of his disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).

The proper defendant in an ADA claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has

7

named the MDOC as a Defendant. The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claim under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 157, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claim and that the MDOC is properly a Defendant.

Nevertheless, even assuming that Plaintiff's medical condition qualifies as a disability under the ADA and RA, Plaintiff's claim still fails because he has not sufficiently alleged that he is being discriminated against because of his disability. Plaintiff alleges that the waiting list for the new HCV treatment program is created by testing HCV positive inmates' liver enzymes and an inmates' position on the waiting list is based on the liver enzyme scores. Thus, all HCV positive inmates, including those with cirrhosis, are treated the same way and obtain the benefits of the new HCV treatment program in the same way. Plaintiff is not being treated differently then any other HCV positive inmate. Moreover, it is manifest that Plaintiff is not being excluded or denied treatment, Plaintiff is on a waiting list to *receive* treatment. Plaintiff cannot state a claim under the ADA or RA merely because he believes that inmates with cirrhosis of the liver should receive treatment first or because he thinks that liver enzyme scores should not be the basis for determining placement on the waiting list. The failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA

"would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" and that the statute "does not create a remedy for medical malpractice"); *McNally v. Prison Health Servs.*, 46 F.Supp.2d 49, 58 (D. Me. 1999) (distinguishing between "claims that the medical treatment received for a disability was inadequate from claims that a prisoner has been denied access to services or programs because he is disabled," and concluding that only the latter class of claims states an ADA violation). Thus, Plaintiff's allegations do not state a claim under the ADA or RA. Therefore, the ADA and RA claims will be dismissed. Moreover, because there are no other claims against the MDOC, it will be dismissed as a Defendant in this action.

### C. Remaining Claims and Defendants

Upon initial review, the Court concludes that Plaintiff has adequately alleged claims against Defendants Hutchison, Corizon, Heyns, Unknown Party #1, Burke, and Unknown Party #2.

### III. Motion to Appoint Counsel

In his Complaint, Plaintiff requests that the Court appoint counsel. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has

carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will be denied.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, McKee and Finco will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) and Plaintiff's third claim for relief for violation of the ADA and RA The Court will serve the complaint against Defendants Hutchinson, Corizon, Heyns and Burke.[2] Plaintiff's request for the appointment of counsel will be denied.

An Order consistent with this Opinion will be entered.

Dated: September 12, 2013 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE

---

[2] The Court lacks sufficient information at this time to effectuate service against Unknown Party #1 and Unknown Party #2.