UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

| | | |
|---|---|---|
| JAMES M. STEVENS, # 155008, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-918 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| CRAIG HUTCHINSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽ | ) | |

## **REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.  The defendants are Craig Hutchinson, M.D., Gail Burke, M.D., Corizon Health, Inc., former Director of the Michigan Department of Corrections (MDOC) Daniel Heyns, current MDOC Director Heidi Washington, MDOC's Chief Medical Officer Jeffrey Stieve, and a John Doe.

Plaintiff had Hepatitis-C (HCV) when he filed this lawsuit on August 22, 2013. During the period from March 7, 2016, through May 29, 2016, plaintiff received a Harvoni and ribavirin treatment protocol, and he has been cured of his HCV infection. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.  In addition, he alleges that defendants violated his rights under the Fourteenth Amendment's Equal Protection Clause, because, as a patient requiring HCV triple therapy treatment, he was treated differently from inmates who only required dual therapy HCV treatment.   Plaintiff

-1-

seeks damages and declaratory and injunctive relief.    (Second Amended Complaint, ECF No. 115).

Defendants Hutchinson, Burke, and Corizon Health, Inc. (collectively referred to as the Corizon defendants) have filed a motion for summary judgment (ECF No. 132) and a corrected motion for summary judgment (ECF No. 133).    A corrected motion was necessary to reflect the Corizon defendants' compliance with W.D. MICH. LCIVR 7.1(d).    (ECF No. 133 at PageID.1510).    Plaintiff has filed his response. (ECF No. 138).    I recommend that the Corizon defendants' superseded motion (ECF No. 132) be dismissed without prejudice.    For the reasons set forth herein, I recommend that defendants' corrected motion for summary judgment (ECF No. 133) be granted and that judgment be entered in favor of the Corizon defendants on all plaintiff's claims.

Defendants Heyns, Washington, and Stieve (collectively referred to as the MDOC defendants) have filed a hybrid motion seeking dismissal of claims under Rules 12(b)(1) and 12(b)(6) and summary judgment based on the affirmative defense of failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a). (ECF No. 117).    Plaintiff has filed his response.    (ECF No. 130).    Upon review, I recommend that the MDOC defendants' motion be granted in part and denied in part. I recommend that plaintiff's claims for declaratory and injunctive relief be dismissed as moot.    I recommend that plaintiff's purported claims under the Fourteenth Amendment's Equal Protection Clause be dismissed under Rule12(b)(6).    I recommend that all plaintiff's claims for damages against the MDOC defendants in

their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.   I recommend that plaintiff's Eighth Amendment claims for damages against defendants Heyns and Washington in their individual capacities be dismissed with prejudice because I find that those defendants have claimed, and are entitled to qualified immunity.   I recommend that the remainder of the MDOC defendants' motion be denied.

I recommend that plaintiff's claims against the John Doe defendant be dismissed without prejudice.

If this report and recommendation is adopted in its entirety, plaintiff's only remaining claim will be his Eighth Amendment claim for damages against defendant Stieve in his individual capacity.

## I.    Plaintiff's Rule 54(d) Requests that Court Defer a Decision on the Pending Motions and Reopen Discovery

Plaintiff did not file a motion under Rule 54(b).   His briefs contain requests that the Court defer rulings on defendants' motions and reopen discovery.   (ECF No. 130, PageID.1204-08, 1213; ECF No. 138, PageID.1561, 1582-84).   Plaintiff has attached affidavits to those briefs in which he invokes Rule 54(d) of the Federal Rules of Civil Procedure.   (ECF No. 130-4, PageID.l232-1244; ECF No. 138-12, PageID.1836-62).

The MDOC defendants' motion for summary judgment is based on the affirmative defense provided by 42 U.S.C. § 1997e(a).   None of the discovery that plaintiff now claims he needs is directed to the issue of exhaustion of administrative

remedies.    Further, none of the discovery is directed at the issue of whether plaintiff's claims for declaratory and injunctive relief are moot or have been abandoned through amendment.    The Rule 12(b)(6) portion of the MDOC defendants' motion is directed against the adequacy of plaintiff's Second Amended Complaint.    Plaintiff requires no discovery to respond to a challenge to the adequacy of his pleading.    The Court is not persuaded that plaintiff requires any additional discovery from the Corizon defendants.    Plaintiff has already been provided with voluminous medical records and multiple declarations under oath from physicians describing why plaintiff received specific medical care during the period at issue. Plaintiff's request that the Court defer a decision on the pending motions and reopen discovery is denied.

## II.    Corizon Defendants

The Corizon defendants are seeking summary judgment on the merits of plaintiff's claims against them.    (ECF No. 133).    I recommend that defendants' motion be granted and that judgment be entered in favor of the Corizon defendants on all plaintiff's claims.

### A.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.    FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).    The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).   The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.   *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.   *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Warner*, 677 F. App'x 996, 1001 (6th Cir. 2017).   The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.   *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).   "A mere scintilla of

evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' " *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

B. Proposed Findings of Fact

The following facts are beyond genuine issue.   Dr. Craig Hutchinson is a physician licensed in the State of Michigan.   He is certified in Internal Medicine and Infectious Diseases by the American Board of Internal Medicine, and is a Fellow of the American College of Physicians.   Dr. Hutchinson is the Clinical Consultant in Infectious Diseases for Quality Correctional Care of Michigan, PC, a subsidiary of Corizon Health, Inc.   In this position, Dr. Hutchinson works in conjunction with the MDOC with respect to the treatment of prisoners with hepatitis C (HCV) infection.

The HCV treatment program is implemented by the MDOC and follows the latest national treatment guidelines.   The drugs required for the HCV treatment are paid for by the State of Michigan, not Corizon.   Accordingly, the number of inmates who can receive treatment at any one time is controlled by the MDOC and is commensurate with the number of individuals requiring treatment under the standards of the program.   (Hutchinson Decl. ¶¶ 2-5, ECF No. 132-1, PageID.1274-75).

Pursuant to the program, MDOC prisoners who have been identified as having HCV are monitored and prioritized for consideration for treatment.   In particular, those inmates who need treatment most immediately are provided to access to the

-6-

treatment first.   This is determined by the individual's liver function.   Specifically, those inmates at stage 4 fibrosis of the liver (cirrhosis), with the lowest liver reserve are prioritized, as they can least afford to await future treatment options.   Dr. Hutchinson's role in the program is to evaluate eligibility for the program and determine the timing and content of the treatment regimen.   For individuals who have received interferon-based treatment previously, there is no lowering of their priority for subsequent treatment programs.   The fact that an individual was not responsive to treatment, however, could impact the likelihood of success of a subsequent treatment.   (*Id.* at ¶¶ 6-7, PageID.1275-76).

Plaintiff is an inmate held in the custody of the MDOC. He did have HCV and he does have stage 4 liver fibrosis or cirrhosis.   As treatment for his HCV, plaintiff received peg-interferon and ribavirin dual therapy from August 2010 through July 2011.   Plaintiff's response to the dual therapy HCV treatment was sluggish during the treatment, and any positive results obtained were not sustained after treatment.   By September 21, 2011, plaintiff's blood tests indicated a recurrence of the virus, demonstrating that the HCV treatment had failed.   Such failure is not uncommon, because the standard dual therapy of peg-interferon and ribavirin is unsuccessful in more than 50% of the patients with plaintiff's form of Hepatitis C.   (*Id.* at ¶ 8, PageID.1276).

Gail Burke, D.O., is a physician licensed by the State of Michigan.   She is currently a physician at the Bellamy Creek Correctional Facility (IBC), and she has held that position since 2010.   (Burke Decl. ¶¶ 2-3, ECF No. 132-2, PageID.1285).

Dr. Burke did not control whether a prisoner received a particular course of treatment for his HCV infection.   For that particular health condition, all inmates within the MDOC are centrally evaluated and prescribed treatment.   (*Id.* at ¶ 4, PageID.1286). Dr. Burke's role in treating inmates with HCV was to monitor and document their condition through regular in-person evaluations, blood draws, and, in plaintiff's case, liver ultrasounds.   In addition, other medical staff at the prison provided evaluation and treatment of symptoms or conditions related to HCV or side effects of HCV treatment.   (*Id.* at ¶ 5, PageID.1286).

Dr. Burke indicates that plaintiff transferred to IBC in the spring of 2011, more than half way through his dual therapy hepatitis C treatment.   Inmates with HCV are placed in a chronic care program for long term conditions so that they are scheduled for regular evaluations by an upper-level medical provider without having to submit a request, or kite, to do so.   After his arrival, plaintiff was seen regularly by Dr. Burke or another upper-level medical care provider as part of his chronic-care program for HCV.   (*Id.* at ¶ 6, PageID.1286).

Plaintiff filed this lawsuit on August 22, 2013. (ECF No. 1).   The medical records generated in connection with the care that plaintiff has received spans hundreds of pages.   (ECF No. 132-3, PageID.1290-1467; ECF No. 138-8, PageID.1694-1784).   The triple therapy that plaintiff sought when he filed this lawsuit was never the optimal treatment for him because it relied heavily on peg-interferon and ribavirin to treat the virus.   Because these two antivirals had previously been unsuccessful, plaintiff's likelihood of success with triple therapy was

low.   The third component of triple therapy (boceprevir or telaprevir) was not very potent.   It was only marginally more effective than dual therapy, and for patients with cirrhosis, this protocol required up to eleven months of treatment.   Further, triple therapy had additional substantial side effects and risks, including potential drug-resistance to other antivirals.   Triple therapy was never expected to be advisable for all hepatitis C patients.   Selective use was indicated for patients who could be optimally treated with this protocol based on side effects, risk, and likelihood of success compared to the alternative which was to await less toxic and more effective treatment regimens.   Plaintiff's liver and bone marrow function remained well preserved.   Due to plaintiff's stable condition, rather than rushing into a likely-ineffective option for treatment, it was Dr. Hutchinson's medical opinion that the proper course of care for plaintiff, regardless of his status as an inmate, was to wait for an optimal antiviral therapy.   If plaintiff's blood tests had indicated a significant decrease in his bone marrow and liver function during this period, Dr. Hutchinson would not have continued to wait for an optimal treatment, but would have placed plaintiff on the triple therapy as the best immediately available option.   There is no indication from plaintiff's blood tests or any other medical evaluation that his HCV and cirrhosis of the liver were adversely impacted by this strategy.   Optimal antiviral treatment is patient specific, taking into consideration whether a particular therapy would result in a high likelihood of a cure and be safe for that individual patient.   (Hutchinson Decl. ¶¶ 8-16, ECF No. 132-2, PageID.1276-77).

After the conclusion of his dual therapy, plaintiff's condition was monitored frequently via blood tests and he was seen regularly by primary care providers at his prison facility, pursuant to his chronic care program for HCV, as well as numerous other office visits.    Plaintiff's liver function was regularly monitored.    Dr. Hutchinson attempted to have a consultation with each of his HCV patients with cirrhosis every six to twelve months via telemedicine.    Between appointments, he was regularly monitoring each patient's blood tests results and was in communication with their facility physicians regarding any changes in conditions or adverse blood test results.    (*Id.* at ¶¶ 17-26, ECF No. 132-1, PageID.1278-81; Burke Decl. ¶¶ 7-17, ECF No. 132-2, PageID.1287-88).

In February 2014, plaintiff was transferred from IBC to another prison.    Dr. Burke has not been involved in plaintiff's medical care since that transfer.    During his period at IBC, plaintiff's blood tests and ultrasounds did not indicate a deterioration or worsening of his condition.    It is Dr. Burke's professional medical opinion that the treatment and monitoring that plaintiff received during his confinement at IBC was medically appropriate and within the prevailing standard of care for plaintiff's condition.    (Burke Decl. ¶¶ 18-19, ECF No. 132-2, PageID.1288-89).    Dr. Hutchinson also provided his expert opinion that the medical care that plaintiff received from Dr. Burke and others was proper for liver-related evaluation and treatment and within prevailing professional standards of medical care. (Hutchinson Decl. ¶ 34, ECF No. 132-1, PageID.1283).    Plaintiff has presented no contrary medical opinions.

-10-

In November 2015, plaintiff was to receive the current HCV treatment protocol of Harvoni and ribavirin for 12 weeks.   When Dr. Hutchinson contacted plaintiff's institution regarding his transfer to an institution designated by MDOC to provide the HCV treatment, the doctor learned that plaintiff had recently received two disciplinary actions for having alcohol in his cell.   (*Id.* at ¶ 27, PageID.1281; ECF No. 138-7, PageID.1671-74).   Dr. Hutchinson was aware of plaintiff's claim that he did not have the alcohol for his own consumption, but instead possessed it for sale. (Plf. Aff. ¶ 60, ECF No. 138-12, PageID.1860).

Alcohol kills liver cells, and ongoing alcohol use is generally considered a contraindication to HCV treatment.   Due to his possession of alcohol, plaintiff was not given one of the open treatment slots.   It was filled by another inmate. Nevertheless, plaintiff remained eligible for treatment when his alcohol use ceased, provided he did not engage in any other contra-indicated behavior.   (Hutchinson Decl. ¶ 28, ECF No. 132-1, PageID.1282).

On February 24, 2016, Dr. Hutchinson re-evaluated plaintiff's condition and scheduled him for treatment.   It was not based on any change in plaintiff's clinical condition.   There was an opening available and plaintiff had no recurrence of alcohol -related misconduct.   Plaintiff pledged complete abstinence from alcohol and Dr. Hutchinson approved him for treatment.   (Hutchinson Decl. ¶ 29, ECF No. 132-1, PageID.1282).

Plaintiff underwent Harvoni and ribavirin treatment protocol from March 7, 2016, through May 29, 2016.   Plaintiff had no detectable HCV RNA in the blood after

four weeks (June 29, 2016), twelve weeks (August 22, 2016), and 24 weeks (November 21, 2016) after the end of treatment.   These results indicate that plaintiff's hepatitis C has been cured.   Because plaintiff no longer has HCV infection, he no longer requires evaluation and monitoring by Dr. Hutchinson.   (*Id.* at ¶¶ 29, 30, PageID.1282).

Plaintiff has cirrhosis, so he is susceptible to liver cancer.   Dr. Hutchinson indicated that plaintiff should receive a liver ultrasound every six months, and he advised plaintiff that he should be active in reminding healthcare providers of this need.   Health care providers at plaintiff's places of incarceration are able to schedule him for regular testing and ultrasounds to monitor his cirrhosis and potential for liver cancer.   Plaintiff's most recent blood tests of June 7, 2017, show normal liver enzymes, and albumin in the middle of the normal range.   Albumin is an important indicator of adequacy of liver function.   In addition, plaintiff's most recent liver ultrasound of June 13, 2017, showed no masses, which indicates he has not developed liver cancer.   (*Id.* at ¶¶ 31-32, PageID.1282-82).

While awaiting a more optimal treatment, plaintiff's liver and bone marrow function were monitored every several months.   Plaintiff's priority for the treatment was based on his liver function.   Other patients with functional compromise of their liver received higher priority while Dr. Hutchinson and others worked to expand the resources to allow larger-scale deployment of the safer and more effective treatment. (*Id.* at ¶ 33, PageID.1283).

-12-

It is Dr. Hutchinson's medical opinion that plaintiff was adequately and sufficiently treated for his HCV infection and cirrhosis within the prevailing standard of care for these conditions.   It is also his opinion that in regard to these conditions and related symptoms, the medical staff at plaintiff's places of incarceration, including but not limited to Dr. Burke, provided plaintiff with proper liver-related evaluation and treatments within the prevailing applicable standards of care.   (*Id.* at ¶ 34, PageID.1283).   Although plaintiff clearly believes that he should have been treated at an earlier date rather than being monitored (Plf. Aff. ¶¶ 52-64, ECF No. 138-12, PageID.1857-62), he has presented no supporting medical opinions.

By not initiating the first FDA-approved triple therapy protocol, plaintiff avoided a lengthy treatment process with numerous side effects and an unlikely chance of success in lieu of a potentially more effective course of treatment. Though plaintiff did not receive the Harvoni plus ribavirin treatment protocol when it was immediately available, that was because his stable liver function demonstrated that it was not an immediate need, particularly where there were other more compromised patients that did immediately require the treatment.   In addition, several months of his delay in treatment – from November 2015 to March 2016 – were due to his own self-destructive, alcohol-related behavior.   Ultimately, plaintiff was able to receive the optimal treatment for his condition and his HCV was cured. (Hutchinson Decl. ¶ 35, ECF No. 132-1, PageID.1284).

There is no indication from plaintiff's lab tests or any other medical record that his conditions have been adversely affected by the course of treatment provided.

Plaintiff's HCV has been cured and there is no medical evidence that his liver function was compromised.   (*Id.* at ¶ 36, PageID.1284).

    C. <u>Discussion</u>

        1. Eighth Amendment

Plaintiff alleges that doctors Hutchinson and Burke violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause.   In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05.   In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.   *Westlake v. Lucas*, 537 F.2d 857, 860 n. 4 (6th Cir.1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard.   A prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component).   *Id.* at 298.   The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.   A prison official

cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.*. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir.2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 813 (citations and quotations omitted).

Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d 162,169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n. 5; *see also Reed v. Speck*, No. 12-5172, 2012 WL 6176846, at *3 (6th Cir. Dec. 11, 2012) ("The subjective component is intended 'to prevent the constitutionalization of medical malpractice claims.' ") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d at 550)).

"[N]ot every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Anthony v. Swanson*, No.

-15-

16-3444, __ F. App'x __, 2017 WL 2992224, at *3 (6th Cir. July 14, 2017) (citation and quotation omitted).   Here, plaintiff has not presented evidence on which any reasonable trier of fact could find in his favor on either prong of an Eighth Amendment claim against doctors Hutchinson and Burke.

"[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky*, 238 F.3d 739, 742 (6th Cir. 2001) (citation and quotation omitted).   It is well-established that not all cases of Hepatitis C require treatment.   *See* V*illarreal v. Holland*, No. 14-9-DLB, 2016 WL 208310, at *8 (E.D. Ky. Jan. 15, 2016); *Allen v. Shawney*, No. 11-10942, 2014 WL 1089618, at *11 (E.D. Mich. Mar. 18, 2014); *Loukas v. Michigan Dep't of Corr.*, No. 2:07-cv-142, 2008 WL 544639, at *2 (W.D. Mich. Feb. 27, 2008).   Hepatitis C does not fall into the category of a medical condition providing an "obvious" need for medical treatment.   *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004); *see also Anthony v. Swanson*, 2017 WL 2992224, at *4   (The obviousness standard does not apply in cases where a prisoner claims that he "was denied or delayed in receiving a specific type of medical treatment.") (citation and quotation omitted).

Here, plaintiff failed to present verifying medical evidence showing that his condition required treatment at any time before he received it.   Moreover, the record is devoid of evidence of any deficiency in plaintiff's medical care.   Plaintiff's disagreement with the medical care provided falls far short of supporting an Eighth

Amendment claim.   *See Anthony v. Swanson*, 2017 WL 2992224, at *3-4; *Hearington v. Pandya*, 689 F. App'x 422, 426-27 (6th Cir. 2017).

### 2.   Equal Protection

Plaintiff alleges that defendants violated the Fourteenth Amendment's Equal Protection Clause by limiting the availability of triple therapy to a limited number of prisoners at a single correctional facility.   (ECF No. 115 at PageID.1026).   This fails to state a claim against any defendant.   The Equal Protection Clause "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights."   *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *see Boone v. Heyns*, No. 12-14098, 2017 WL 3977524, at *3 (E.D. Mich. Sept. 11, 2017); *Stevens v. Michigan Dep't of Corr.*, No. 1:17-cv-495, 2017 WL 2703927, at * 4-5 (W.D. Mich. June 23, 2017).   The appropriate course of medical treatment is a highly individualized determination.

I find that plaintiff's Second Amended Complaint fails to allege a viable equal protection claim against any defendant.   Further, I find that plaintiff has not presented evidence sufficient to survive the Corizon defendants' well-supported corrected motion for summary judgment.   *See Dodson v. Wilkinson*, 304 F. App'x 434, 441 n.1 (6th Cir. 2008); *see also Simpson v. Ameji*, 57 F. App'x 238, 239 (6th Cir. 2003).

### 3.   Corizon

Plaintiff seeks to hold Corizon vicariously liable for the acts of its employees. A private corporation cannot be held liable under Section 1983 on the basis of *respondeat superior* or vicarious liability.   *See Street v. Corr. Corp. of Am.*, 102 F.3d

810, 818 (6th Cir. 1996). Rather, the plaintiff must establish a policy or custom that caused the constitutional violation. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008); *see Lane v. Wexford Health Sources*, 510 F. App'x 385, 387 (6th Cir. 2013).

Plaintiff argues that Corizon had a policy of "bottlenecking" triple antiviral therapy to a single correctional facility and an unreasonably small number of prisoners. (Plaintiff's Brief at 9-11, 23, ECF No. 138, Page ID.1568-70, 1582). Plaintiff is proceeding *pro se* and is limited to representing himself on his own claims. *See* 28 U.S.C. § 1654; *see also Belser v. Woods*, No. 2:16-cv-134, 2016 WL 6975936, at *5 (W.D. Mich. Nov. 29, 2016) (collecting cases). Plaintiff has not presented medical evidence that he suffered injury caused by a Corizon policy or custom. I find that Corizon is entitled to judgment in its favor was a matter of law.

## III.    MDOC Defendants

The MDOC defendants are current MDOC Director Heidi Washington, former MDOC Director Daniel Heyns, and MDOC Chief Medical Officer Jeffrey Stieve. Plaintiff sues these defendants in their individual and official capacities. (ECF No. 115 at PageID.1005-06). The MDOC defendants have filed a hybrid motion. They seek dismissal of some claims as moot, others for failure to state a claim, and all plaintiff's claims for damages against defendants Washington and Heyns in their individual capacities on the basis of qualified immunity. Alternatively, the MDOC defendants seek summary judgment under Rule 56 based on all plaintiff's claims

based on the affirmative defense that plaintiff failed to properly exhaust his available administrative remedies.

A. <u>Mootness</u>

The focus of plaintiff's lawsuit has shifted over time.  His initial focus was attempting to overcome the medical determinations regarding how and when he should receive HCV treatment, and to obtain a court order compelling defendants to provide him with triple antiviral therapy.  (ECF No. 14).  Plaintiff's primary focus at this juncture is obtaining damages for delay in receiving HCV treatment.  (ECF No. 115 at PageID.1028).

The MDOC defendants argue that plaintiff's Eighth Amendment claim based on the denial of triple antiviral therapy is moot.  (Defendants' Brief at 11, ECF No. 118, PageID.1058).  But plaintiff claims entitlement to damages stemming from delay in receiving treatment.  (Plaintiff's Brief at 10, ECF No. 130, PageID.1203). "A claim for money damages is generally sufficient to prevent dismissal on grounds of mootness." *Kinder v. Northwestern Bank*, No. 1:10-cv-405, 2013 WL 1914519, at *3 (W.D. Mich. Apr. 15, 2013) (collecting cases).  Accordingly, I find that plaintiff's claims for delay-based damages are not moot.

Plaintiff received treatment and his HCV is cured.[1]  Plaintiff is no longer seeking triple antiviral therapy.  (ECF No. 115 at PageID.1028).  Whatever the

---

[1] In his Second Amended Complaint, plaintiff contends that it is within the Court's purview to order the MDOC defendants to provide him with proper and

current MDOC policy is regarding treatment of prisoners with hepatitis C, it does not affect plaintiff.   As previously noted, plaintiff is proceeding *pro se* and is limited to representing himself on his own claims.   *See* 28 U.S.C. § 1654.   I find that plaintiff's requests for injunctive and declaratory relief are moot, and I recommend that they be dismissed.

     B. <u>Eleventh Amendment Immunity</u>

     Plaintiff's claims for damages against the MDOC defendants in their official capacities are barred by Eleventh Amendment immunity.   The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.   *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court.   *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).   A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).   Furthermore, states and their

---

adequate follow-up care for his cirrhosis after his HCV was cured.   (ECF No. 115 at PageID.1025).   Plaintiff makes a similar contention in his brief.   (Plaintiff's Brief at 10, ECF No. 130, PageID.1203).   As shown in greater detail in the discussion under Rule 12(b)(6), below, plaintiff's allegations against the MDOC defendants are based on the alleged policy or custom limiting triple antiviral treatment to one prison and a limited number of prisoners.   None of the MDOC defendants are plaintiff's medical care providers.   There is no foundation for post-cure injunctive relief against the MDOC defendants.

departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

Defendants Washington, Heyns, and Stieve are entitled to dismissal with prejudice of plaintiff's claims for monetary damages against them in their official capacities.

    C.    Rule 12(b)(6) Motion

        1.  Rule 12(b)(6) Standards

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).    Under Rule 8(a)(2), a complaint must provide " 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' "  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and FED. R. CIV. P. 8(a)(2)).    While this notice pleading standard does not require "detailed" factual allegations, it does require more than labels and the bare assertion of legal conclusions.    *See Twombly*, 550 U.S. at 555.

Generally, when considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor.    *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).    "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' "  *Twombly*, 550 U.S. at 555 (quoting

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009); *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).   Courts are not required to conjure up unpled allegations, nor accept unwarranted factual inferences.   *See Total Benefits Planning*, 552 F.3d at 434.   "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.' "   *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570); *see Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).   Even the lenient treatment generally given *pro se* pleadings has its limits, however.   *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).   "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' "   *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678).   "A plaintiff falls short if [] he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]' "   *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

2.    Qualified Immunity Standards

Defendants Heyns and Washington argue that they are entitled to summary judgment on plaintiff's claims for damages against them in their individual capacities on the basis of qualified immunity.    "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' "    *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *see Hermansen v. Thompson*, 678 F. App'x 321, (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."    *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014).    The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right.    *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).    The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct.    *Id.*    Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.    *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

-23-

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted....   Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.   If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."   *Plumhoff v.*

-24-

*Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. at 552.

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' "    *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Shreve v. Franklin County, Ohio*, 743 F.3d 126, 134 (6th Cir. 2014); *T. S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).    The burden applies to each claim-.    *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

### 3.    Plaintiff's Allegations

Plaintiff alleges that, on October 24, 2012, defendant Stieve issued a memorandum titled "Hepatitis C Protocol Addendum," which outlines the selection process for triple antiviral therapy candidates.    (ECF No. 115 at PageID.1009; ECF No. 115-1, PageID.1033).    The memorandum specified that the HCV triple therapy project would be conducted at two MDOC prisons, and a maximum of ten males would be enrolled for active treatment at the Carson City Correctional Facility at any one time.    The memorandum noted that spreadsheets had been developed to identify male candidates for triple drug treatment for HCV.    Based on the spreadsheets, candidates would be prioritized for consideration of treatment.    Most of the male candidates had stage 4 fibrosis, HCV genotype, adequate platelets to tolerate peg-interferon, compensated liver function, no HIV or HBV co-infection, and sufficient time in custody to allow completion of treatment.    Those with the lowest platelet

counts would be chosen first, as they could least afford to await future treatment options.   (ECF No. 115-1, PageID.1033).

Plaintiff alleges that, on January 31, 2014, Dr. Hutchinson informed him that the "newer, more effective HCV drugs recently assimilated into the triple antiviral treatment program at the Carson City Correctional Facility" were "very expensive," and that was why MDOC Director Heyns and Chief Medical Officer Stieve would only authorize the Corizon defendants to treat a limited number of prisoners at a single correctional facility.   (ECF No. 115 at PageID.1015).

Plaintiff states that former MDOC Director Daniel Heyns left office in July 2015, and that shortly thereafter, Director Heidi Washington took office.   (*Id.* at PageID.1018).   Plaintiff alleges that Director Washington adopted her predecessor's custom, practice, or policy to continue to deny or delay care to inmates requiring treatment.   (*Id.*).   He believes that the MDOC defendants unreasonably restricted treatment and monitoring of "F4 HCV-infected inmates who required antiviral therapy."   (*Id.* at PageID.1022).

4.  Discussion

a.  Eighth Amendment

The MDOC defendants argue that to the extent that plaintiff's Eighth Amendment claims are based on delay in treatment, his claims must be dismissed because he has not shown any detrimental effect from the delay.   (Defendants' Brief at 15, ECF No. 118, PageID.1062).   Defendants' reliance on the Sixth Circuit's decision in *Napier v. Madison County* is misplaced in the Rule 12(b)(6) context.   In

response to a motion for *summary judgment*, a plaintiff claiming that delay in receiving medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.    *See Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 778-79 (6th Cir. 2012); *Napier*, 238 F.3d at 742.

The MDOC defendants have not identified any case where the Sixth Circuit has extended the "verifying medical evidence" requirement to a challenge to the adequacy of a pleading under Rule 12(b)(6).    The Sixth Circuit's unpublished decision in *Love v. Taft*, 30 F. App'x 336, 338 (6th Cir. 2002) mentions *Napier* in the Rule 12(b)(6) context, but the Court of Appeals held that dismissal was appropriate because prisoner Love "ha[d] not *alleged* any actual detrimental effect resulting from the delay in treatment."    (emphasis added).

The evidence presented in support of the Corizon defendants' motion for summary judgment suggests that, in the future, plaintiff will likely face an insurmountable hurdle in placing verifying medical evidence in the record to establish the detrimental effect of the delay in his receipt of HCV treatment.    The MDOC defendants have presented no developed argument, however, establishing how this Court could consider such evidence in the Rule 12(b)(6) context without committing error.    Review must be restricted to addressing the allegations found in plaintiff's Second Amended Complaint and the documents attached to it pursuant to the authority provided by Rule 10(c) of the Federal Rules of Civil Procedure.

Defendants' brief also contains scattered arguments that defendants lacked sufficient personal involvement to be held liable.  (Defendants' Brief at 12, 16-17, ECF No. 118, PageID.1059, 1064-65).   It is well established that government officials may not be held liable for the unconstitutional conduct of their subordinates or others under a theory of *respondeat superior* or vicarious liability.   *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).    A claimed constitutional violation must be based upon active unconstitutional behavior.   *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).   The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).   "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here plaintiff alleges that defendants were the policy makers for the MDOC's "bottlenecked" Hepatitis C treatment program, and he alleges that he suffered injury as a result of that policy.  This was sufficient personal involvement for the claims against the MDOC defendants to survive initial screening under Rule12(b)(6) standards (ECF No. 4), and it remains sufficient for the Eight Amendment claims against the MDOC defendants found in plaintiff's current pleading to withstand scrutiny under Rule 12(b)(6).

### b.  Equal Protection

Plaintiff's complaint fails to state a claim against any defendant for violation of the Fourteenth Amendment's Equal Protection Clause for the reasons previously stated in section II(C)(2).

### c.  Qualified Immunity

Defendants Heyns and Washington[2] also claim entitlement to qualified immunity on plaintiff's claims for damages against them in their individual capacities.   (Defendants' Brief at 15-20, ECF No. 118, PageID.1062-66).   Plaintiff fails to satisfy the first prong of the qualified immunity analysis on equal protection claims for the reasons stated in section II(C)(2).

The second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198.   It was plaintiff's burden to convince the Court that the law was clearly established when each defendant acted.   *See Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 992-93 (6th Cir. 2017); *Hill v. Miracle*, 853 F.3d at 312, 316.   Existing precedent "must have placed the ... constitutional

---

[2] The failure to include defendant Stieve was probably an oversight.   Defendant Stieve would have been entitled to qualified immunity if he had claimed entitlement to it.   Nonetheless, the MDOC defendants' motion indicates that defendants seek "qualified immunity, as set forth in more detail in the supporting Brief" (ECF No. 117 at PageID.1046), and the discussion appearing in that brief is limited to defendants Heyns and Washington.   The one reference to defendant Stieve simply identifies him as the author of the October 24, 2012, memorandum.   (Defendants' Brief at 17, ECF No. 118, PageID.1064).

question beyond debate." *White v. Pauly*, 137 S. Ct. at 551; *see Mitchell v. Schlabach*, 864 F.3d at 424-26.

Although plaintiff argues that defendants Heyns and Washington are not entitled to qualified immunity (Plaintiff's Brief at 18-20, ECF No. 130, PageID.1211-13) he fails to cite any case where state officials have been held liable for violating Eighth Amendment rights under similar circumstances. In this rapidly-evolving area of treatment of hepatitis C, I find no clearly established precedent regarding how large a State's treatment program must be, how many prison facilities must be involved, and how quickly after the FDA approves a new form of treatment it must be implemented in the prison setting. Plaintiff did not carry his burden of demonstrating that existing precedent placed the constitutional question beyond debate at the time each defendant acted. Accordingly, I find that defendants Heyns and Washington are entitled to qualified immunity.

d. John Doe

On April 26, 2017, plaintiff filed his Second Amended Complaint. (ECF No. 115). His pleading lists a John Doe defendant. Plaintiff has not attempted to amend his complaint to specifically identify this individual. John Doe was not served within the time provided by Rule 4(m) of the Federal Rules of Civil Procedure. Dismissal of all plaintiff's claims against John Doe without prejudice is appropriate. *See e.g.*, *Epperson v. City of Humboldt*, 183 F. Supp. 3d 897, 908 (W.D. Tenn. 2016); *Odom v. Corizon, Inc*, No. 1:14-cv-606, 2015 WL 5749532, at *3 (W.D. Mich. Sept. 30, 2015). This report and recommendation serves as notice of impending dismissal. I

recommend that all plaintiff's claims against the John Doe defendant be dismissed without prejudice.

### e. Summary Judgment

Alternatively, the MDOC defendants seek summary judgment based on plaintiff's failure to exhaust his available administrative remedies against them. (ECF No. 117 at PageID.1045; Defendants' Brief at 7-11, ECF No. 118, PageID.1054-58).

### 1. Summary Judgment Standard for a Party With the Burden of Proof

A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.   A moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).   "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation and quotation omitted). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and " 'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.' "  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13 [1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*,

-31-

270 F.2d at 1056.   Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."   *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### 2. Standards Applicable to Defendants' Affirmative Defense

The MDOC defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies.   A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 "or any other Federal law" must exhaust available administrative remedies.   42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.   *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one.   To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile."   *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate

exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); see 42 U.S.C. § 1997e(a).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[3] The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to

---

[3] A copy of the policy directive is found in the record. (ECF No. 118-1, PageID.1069-75).

invoke the grievance procedure." *Napier*, 636 F.3d at 224.  An argument that it would have been futile to file a grievance does not suffice.  Assertions of futility do not excuse plaintiff from the exhaustion requirement.  *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

### 3.  Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff has been an inmate in the custody of the Michigan Department of Corrections at all times relevant to his Second Amended Complaint.  Plaintiff pursued a number of grievances through a Step III decision by the MDOC's Grievance and Appeals Section before he filed this lawsuit, but none of his grievances named defendants Washington, Heyns or Stieve on claims corresponding to those plaintiff is now asserting against the MDOC defendants.  (ECF No. 118-2, PageID.1077-1162).

One grievance warrants discussion.  On January 17, 2013, the grievance coordinator at Bellamy Creek Correctional Facility (IBC) received a grievance from plaintiff and assigned it Grievance No. IBC-13-01-0200-12D2. (ECF No. 118-2, PageID.1161; ECF No. 130-1, PageID.1216).  It was a grievance complaining that

his HCV and cirrhosis was being monitored and that he was on a waiting list for "HCV re-treatment."    Plaintiff complained that Dr. Hutchinson was being deliberately indifferent to his serious medical needs.    In addition, plaintiff complained that "the health care provider (MDOC Health Services/CMS/PHS/Corizon)" had a policy/custom and/or practice that "bottle-necked re-treatment at the Carson City Facility," thereby delaying or denying plaintiff treatment in violation of his Eighth Amendment rights.  (*Id.*).    Plaintiff's grievance was denied at Step I because plaintiff was on the list for triple treatment and his conditions was being followed by Dr. Hutchinson.  (ECF No. 118-2, PageID.1162). Plaintiff's grievance appeal was denied at Step II.    The Step II response also summarized the record of plaintiff's then-recent medical care.    (*Id.* at PageID.1160). On August 8, 2013, plaintiff's grievance appeal was denied at Step III.    Electronic medical records documented the medical care that plaintiff received and his disagreement with medical judgments did not support his claim.    (*Id.* at PageID.1158).

4.  Discussion

The MDOC defendants have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a).  Exhaustion is mandatory.  *Woodford*, 548 U.S. at 85.  "[N]o unexhausted claim may be considered."  *Jones v. Bock*, 549 U.S. at 220.  Defendants

are correct that plaintiff's grievance failed to name defendants Washington, Heyns, or Stieve.   (Defendants' Brief at 10-11, ECF No. 118, PageID.1057-58).

Plaintiff argues that defendants waived any argument that he failed to exhaust his available administrative remedies, because, when they responded to Grievance No. IBC-13-01-0200-12D2, they addressed his grievance on the merits rather than enforcing the procedural bar that plaintiff failed to identify the defendants and specify any wrongdoing by them.   Plaintiff invokes *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2013) and other cases.   (Plaintiff's Brief at 5-6, ECF No.130, PageID.1198-99).   Plaintiff's waiver argument certainly came as no surprise to defendants, because plaintiff claimed waiver of the exhaustion requirement as early as April 30, 2014.   (ECF No. 68, PageID.689-93).

What is inexplicable is the MDOC defendants' failure to file a reply brief addressing plaintiff's waiver argument.   Because defendants failed to present any developed argument explaining why waiver should not apply, I find that they have not carried their burden on the affirmative defense.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Corizon defendants' corrected motion for summary judgment (ECF No. 133) be granted and that judgment be entered in favor of the Corizon defendants on all plaintiff's claims.   I recommend that the Corizon defendants' superseded motion (ECF No. 132) be dismissed.

I recommend that the MDOC defendants' motion (ECF No. 117) be granted in part and denied in part.  I recommend that plaintiff's claims for declaratory and injunctive relief be dismissed as moot.  I recommend that plaintiff's purported claims under the Fourteenth Amendment's Equal Protection Clause be dismissed under Rule 12(b)(6).  I recommend that all plaintiff's claims for damages against the MDOC defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.  I recommend that plaintiff's Eighth Amendment claims for damages against defendants Heyns and Washington in their individual capacities be dismissed with prejudice because I find that those defendants have claimed, and are entitled to qualified immunity.  I recommend that the remainder of the MDOC defendants' motion be denied.

I recommend that all plaintiff's claims against the John Doe defendant be dismissed without prejudice.

If this report and recommendation is adopted in its entirety, plaintiff's' only remaining claim will be his Eighth Amendment claim for damages against defendant Stieve in his individual capacity.


Dated: December 6, 2017                           /s/   Phillip J. Green
                                                  PHILLIP J. GREEN
                                                  United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a waiver of any further right of appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).