UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES M. STEVENS, # 155008,    )
                               )
                Plaintiff,     )
                               )        Case No. 1:13-cv-918
v.                             )
                               )        Honorable Janet T. Neff
JEFFREY STIEVE, M.D.,          )
                               )
                Defendant.     )
_____)

## REPORT AND RECOMMENDATION

This is a civil rights action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983.   Plaintiff had Hepatitis-C (HCV) when he filed this lawsuit on August 22, 2013.   He received a Harvoni and ribavirin treatment protocol from March 7, 2016, through May 29, 2016, and he has been cured of his HCV infection. Plaintiff alleges that Jeffrey Stieve, M.D., former Chief Medical Officer of the Michigan Department of Corrections (MDOC), was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights by "bottlenecking" the HCV treatment to one prison and a limited number of prisoners.   Plaintiff seeks an award of damages against defendant in his individual capacity.[1]

_____

[1] All other claims have been dismissed.   (ECF No. 148).

-1-

The matter is before the Court on defendant's motion for summary judgment (ECF No. 200).   Plaintiff's response brief includes a motion under Rule 56(d) of the Federal Rules of Civil Procedure asking the Court to deny defendant's motion based on a claimed need for additional time to conduct discovery.    (ECF No. 209). Defendant has filed a reply brief.    (ECF No. 212).    For the reasons set forth herein, I recommend that the Court deny plaintiff's Rule 56(d) motion.    I further recommend that the Court grant defendant's motion for summary judgment, and enter a judgment in defendant's favor on plaintiff's claim.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.    FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).    The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "    *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).    The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.[2]    *See*

---

[2] "The court need consider only the cited materials, but it may consider other materials in the record."    FED. R. CIV. P. 56(c)(3); *see LidoChem, Inc. v. Stoller Enterprises, Inc.*, 500 F. App'x 373, 383 (6th Cir. 2012) ("[C]ourts are not precluded

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.    *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).    Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).    To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.    *See Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019).    The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.    *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see AES-Apex Employer Servs., Inc. v. Rotondo*, 924 F.3d 857, 866 (6th Cir. 2019) ("[C]asting only [a] 'metaphysical doubt' is insufficient to survive summary judgment.") (quoting *Matsushita*, 475 U.S. at 586).    "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' "

---

from exercising the discretion granted to them in Rule 56(c)(3) to review other materials in the record.").

*Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252)); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

### Qualified Immunity

Defendant argues that he is entitled to summary judgment on the basis of qualified immunity.  "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' "  *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).  The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that defendant's conduct violated a constitutional or statutory right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct.  *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

-4-

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage.  *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated.  At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.' "  *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016) (quoting *Anderson*, 477 U.S. at 252).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted.  . . .  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were

sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted).   "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law."   *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation and quotation omitted).   Qualified immunity is an immunity from suit rather than a mere defense to liability.   *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' "   *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see City of Escondido, Calif. v. Emmons*, 139 S. Ct. 500, 503 (2019).   Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."   *Plumhoff*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' "   *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Stevens-Rucker v. City of Columbus, Ohio*, 739 F. App'x 834, 839 (6th Cir. 2018) ("Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity.").   The

burden applies to each claim.   *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## **Preliminary Matters**

Plaintiff's second amended complaint is not properly verified, as he has interjected the limitations that the allegations are made "to the best of [his] information, knowledge and belief."   (ECF No. 115, PageID.1028).   "[S]tatements made on belief or on information and belief, cannot be utilized on a summary-judgment motion."   *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (citation and quotation omitted).   Accordingly, plaintiff's second amended complaint will not be considered as an affidavit in opposition to defendant's motion.   *See Simmons v. Rogers*, No. 1:14-cv-1242, 2017 WL 1179376, at *1 (W.D. Mich. Mar. 30, 2017) (collecting cases).

## **Proposed Findings of Fact**

The following facts are beyond genuine issue.   Plaintiff is an inmate held in the custody of the MDOC.   (ECF No. 209-2, PageID.2502).   Jeffrey Stieve, M.D., was the MDOC's Chief Medical Officer from November 2008, through July 17, 2014. (ECF No. 201-1, PageID.2413).   Dr. Stieve was not plaintiff's treating physician. (ECF No. 209-2, PageID.2502-03).

Plaintiff "did have HCV and he does have stage 4 liver fibrosis, or cirrhosis." (Hutchinson Decl.   ¶ 8, ECF No. 132-1, PageID.1276).   Plaintiff received dual therapy   HCV   treatment   from   August   2010   through   July   2011.   By

September 21, 2011, plaintiff's blood tests indicated a recurrence of the virus, demonstrating that the HCV treatment had failed.    (*Id.*).

On October 24, 2012, Dr. Stieve issued a memorandum labeled as "Hepatitis C Protocol Addendum:   HCV Triple Therapy Selection of Candidates."   (ECF No. 209-2, PageID.2476).   Dr. Stieve indicated that HCV triple therapy project would be implemented at two prisons:   the Carson City Correctional Facility for male prisoners and the Huron Valley Correctional Facility for female prisoners. Enrollment in this treatment program was limited to ten male prisoners and five female prisoners at any one time.   (*Id.*).   This treatment was expensive, and the enrollment numbers were for the maximum number of prisoners MDOC funds allowed.   (ECF No. 201-1, PageID.2414).   Dr. Stieve's memorandum outlined how priority candidates would be selected.   "Those [prisoners] with the lowest platelet counts [would] be chosen first, as they [could] least afford to await future treatment options."   (ECF No. 209-2, PageID.2476).   "[T]hose inmates who need[ed] the treatment most [were] provided with access to the treatment first" and the priority of treatment was established by the individual's liver function.   (Hutchinson Decl. ¶ 6, PageID.1275).

On August 22, 2013, plaintiff filed this lawsuit.   (ECF No. 1).   The primary relief that he sought was an order compelling the defendants to provide him with triple therapy.   (*Id.* at 11-12, PageID.11-12).

Craig Hutchinson, M.D., certified in internal medicine and infectious diseases by the American Board of Internal Medicine, monitored and evaluated plaintiff's medical condition. (Hutchinson Decl. ¶¶ 2-36, PageID.1274-84). He indicated that optimal antiviral treatment is patient specific. The triple therapy that plaintiff sought was never his optimal treatment because it relied heavily on peg-interferon and ribavirin, the two antivirals used in the unsuccessful dual therapy. Triple therapy also had substantial side effects and risks, including potential drug-resistance to other antivirals. (Hutchinson Decl. ¶¶ 8-16, PageID.1276-78). Triple therapy was never expected to be advisable for all HCV patients. Selective use was indicated for patients who could be optimally treated with this protocol based on side effects, risk, and likelihood of success compared to the alternative which was to await less toxic and more effective treatment regimens. (*Id.* at ¶¶ 10-11, PageID.1276-77). By not initiating the first FDA-approved triple therapy protocol, plaintiff avoided a lengthy treatment process with numerous side effects and an unlikely chance of success in lieu of a potentially more effective course of treatment. (*Id.* at ¶ 35, PageID.1284).

"In 2013, it became apparent [to Dr. Hutchinson] that two new, less lengthy, less toxic and more effective forms of triple therapy for HCV genotype 1 (peginterferon, ribavirin and either simeprevir or sofosbuvir) were going to be approved by the FDA in December 2013." (*Id.* at ¶ 15, PageID.1278). Dr. Hutchinson believed that the newly approved form of triple therapy was going to be

an optimal treatment for plaintiff because it had a higher likelihood of success, fewer side effects and a shorter duration.    (*Id.*).

On July 17, 2014, Dr. Stieve resigned from the MDOC.    (ECF No. 201-1, PageID.2413; ECF No. 209-2, PageID.2505).

Dr. Hutchinson and other medical professionals monitored plaintiff's condition and plaintiff provides no medical evidence contradicting Dr. Hutchinson's opinion that this was treatment within prevailing professional standards of medical care.[3] (*Id.* at ¶ 34, PageID.1283).    Plaintiff did not receive the Harvoni plus ribavirin treatment protocol when it was immediately available because his stable liver function indicated that it was not an immediate need and other more compromised patients required immediate treatment.    (*Id.* at ¶ 35, PageID.1284).    There is no indication from plaintiff's blood tests or any other medical evaluation that his medical conditions were adversely impacted by this strategy.    (*Id.* at ¶ 36, PageID.1284).

Plaintiff underwent the optimal Harvoni and ribavirin treatment protocol from March 7, 2016, through May 29, 2016, and his HCV has been cured.    (*Id.* at ¶¶ 30, 35, PageID.1282, 1284).

---

[3] The medical records generated in connection with the care that plaintiff has received spans hundreds of pages.    (ECF No. 132-3, PageID.1290-1467; ECF No. 138-8, PageID.1694-1784; *see also* Hutchinson Decl. ¶¶ 8-36, PageID.1276-84).

## Discussion

A. Rule 56(d)

Plaintiff invokes Rule 56(d) of the Federal Rules of Civil Procedure and asks the Court to deny defendant's motion.   (Plf. Brief, 23-25, ECF No. 209, PageID.2466-68).   I find that plaintiff has not presented grounds under Rule 56(d) for denying or deferring a decision on defendant's motion for summary judgment.

The Sixth Circuit's decision in *Scadden v. Werner*, 677 F. App'x 996 (6th Cir. 2017) is instructive.   The Court of Appeals noted that "[Rule 56(d)] requires a nonmovant to show by affidavit or declaration that, 'for specified reasons, [he] cannot present facts essential to justify its opposition.'   Then, 'the court *may*:   (1) defer considering the motion or deny it; (2) allow time ... to take discovery; or (3) issue any other appropriate order.' " 677 F. App'x at 999 (quoting FED. R. CIV. P. 56(d)) (emphasis added).   "[A] party opposing a motion for summary judgment must 'indicate to the district court [his] need for discovery, what material facts [he] hopes to uncover, and why [he] has not previously discovered the information.' " *Arla v. Liberty Mut. Group, Inc.*, 715 F. App'x 517, 518 (6th Cir. 2018) (quoting *Unan v. Lyon*, 853 F.3d 279, 292-93 (6th Cir. 2017)).   In addition, "the rule only provides that a court 'may' extend the discovery deadline.   Thus, [the Court of Appeals] review[s] the decision 'under an abuse of discretion standard' and only reverse[s] if the decision denying further discovery was 'arbitrary, unjustifiable, or clearly unreasonable.' " *Scadden*, 677 F. App'x at 1000 (quoting *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d

611, 623-24 (6th Cir. 2014)).

Plaintiff argues that summary judgment is "premature" in this lawsuit, which he filed in 2013. (Plf. Brief, 25, PageID.2468). He focuses on fragments of this long-pending case, and he asserts that the Court failed to decide three of his discovery motions. (Plf. Aff. ¶ 40, ECF No. 209-2, PageID.2483) (citing ECF No. 162, 169, 176). Plaintiff signed his Rule 56(d) affidavit on March 28, 2019. (*Id.* at PageID.2488). The Court decided all plaintiff's discovery motions months before he filed his Rule 56(d) affidavit. (*See* 12/9/18 Mem. Op. & Order, ECF No. 195).

On March 30, 2018, the Court found that plaintiff had an adequate opportunity to conduct discovery, and it denied his earlier Rule 56(d) motion. (3/30/2018 Op. & Order, 2-3, 9, ECF No. 148, PageID.2034-35, 2041). Plaintiff also had the opportunity to conduct discovery against defendant Stieve after March 30, 2018. On April 4, 2018, the Court entered its amended case management order establishing the August 2, 2018, deadline for completion of all discovery and the filing of all discovery motions. (ECF No. 149, PageID.2043).

On December 9, 2018, the Court found that plaintiff failed to establish good cause and denied his motion to modify the amended case management order's discovery deadlines. (12/9/18 Mem. Op. & Order, 5, 8, ECF No. 195, PageID.2361, 2364). The Court granted plaintiff's motion to take defendant's deposition on written questions. (*Id.* at 4-5, 8, PageID.2360-61, 2364). Plaintiff's deadline for

completion of Dr. Stieve's deposition was January 14, 2019.[4]    (*Id.* at 8, PageID.2364). Plaintiff did not take defendant's deposition.

I find that plaintiff had an adequate opportunity to conduct discovery and that no other factor or combination of factors warrants delaying consideration of defendants' motion for summary judgment or any other relief authorized under Rule 56(d).

## II.    Eighth Amendment

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.    *Estelle*, 429 U.S. at 104-05.    In judging the sufficiency of "deliberate indifference" claims, the Court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.    *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard:    a prisoner claiming cruel and unusual

---

[4] On March 29, 2019, District Judge Janet Neff denied plaintiff's objections to the Memorandum Opinion and Order.    (3/29/19 Order, ECF No. 208).

punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). *Id.* at 298. "The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). No reasonable trier of fact could find in plaintiff's favor on either component of Eighth Amendment claims against defendant.

"The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Id.* at 737. Plaintiff claims that the treatment he received was inadequate or unreasonably delayed. Thus, he was required to "present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment" and " 'medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain.' " *Id.* (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). "The plaintiff also must place verifying medical evidence in the record to establish the detrimental effect of the inadequate treatment." *Id.* at 738 (citation and quotation omitted).

It is well-established that not all cases of Hepatitis C require treatment. *See Crawford v. Washington*, No. 4:17-cv-11423, 2018 WL 3543600, at *4 (6th Cir.

June 11, 2018); *Villarreal v. Holland*, No. 14-9-DLB, 2016 WL 208310, at *8 (E.D. Ky. Jan. 15, 2016); *Allen v. Shawney*, No. 11-10942, 2014 WL 1089618, at *11 (E.D. Mich. Mar. 18, 2014); *Loukas v. Michigan Dep't of Corr.*, No. 2:07-cv-142, 2008 WL 544639, at *2 (W.D. Mich. Feb. 27, 2008).    Hepatitis C does not fall into the category of a medical condition providing an "obvious" need for medical treatment.    *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004); *see also Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017) (The obviousness standard does not apply in cases where a prisoner claims that he "was denied or delayed in receiving a specific type of medical treatment.") (citation and quotation omitted).

Plaintiff did not present medical evidence that Dr. Stieve's actions were medically inappropriate or that any delay in receiving the desired treatment caused him injury.

The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.    An official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"    *Id.* at 837.    "A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful."    *Rhinehart v. Scutt*, 894 F.3d at 738.    The judgments of medical professionals are entitled to deference.    *Id.* The subjective component presents "a high bar that a plaintiff must clear to prove an

-15-

Eighth Amendment medical needs claim:    The doctor must have *consciously exposed* the patient to an *excessive risk* of *serious* harm." *Id.* (citation and quotation omitted).

The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.   The prison official's state of mind must evince deliberateness tantamount to intent to punish.   Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.   Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

"An inmate's disagreement with the testing and treatment he has received does not rise to the level of an Eighth Amendment violation.   Nor does a desire for additional or different treatment suffice to support an Eighth Amendment claim." *Rhinehart v. Scutt*, 894 F.3d at 740 (citations and quotations omitted).   "A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment."   *Id.* at 744; *see Crawford v. Washington*, 2018 WL 3543600, at *5 (A prisoner's claim based on a purported violation of the "standard of care" in the timing of his HCV treatment "conflate[s] the deliberate indifference standard with the standard of care, an element in a medical malpractice claim."); *see also Henderson v. Tanner*, 15-804, 2019 WL 885914, at *12

-16-

(M.D. La. Feb. 22, 2019) ("[T]he federal constitution certainly does not require that inmates receive optimal care.") (citation and quotation omitted).   Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims that sound in state tort law.   *Rhinehart v. Scutt*, 894 F.3d at 753.

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs.   The record shows that Dr. Stieve displayed no deliberate indifference.   The claims that defendant "should have" provided him with "different" medical care are, at best, state-law malpractice claims.

## III.    Qualified Immunity

Dr. Stieve claims entitlement to qualified immunity.   Plaintiff fails to satisfy the first prong of the qualified immunity analysis for the reasons stated in section II.

The second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198.   It was plaintiff's burden to convince the Court that the law was clearly established when defendant acted.   *See Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 992-93 (6th Cir. 2017).

"To determine whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court,[5] then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019) (citation and quotation omitted). The plaintiff must generally identify a case with a fact pattern similar enough to have given "fair and clear warning to officers" about what the law requires. *White v. Pauly*, 137 S. Ct. at 552. "The pre-existing law that makes a right clearly established comes primarily from the Supreme Court and the Sixth Circuit[.]" *Goode v. Berlanga*, 646 F. App'x 427, 430 (6th Cir. 2016) (citation and quotation omitted). In "rare" instances, the right can be clearly established by decisions from other circuits and district courts. S*ee Beard v. Whitmore Lake School Dist.*, 402 F.3d 598, 608 (6th Cir. 2005). The decisions must "point unmistakably to the unconstitutionality of the conduct and [be] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Goode v. Berlanga*, 646 F. App'x at 430 (citation and quotation omitted). Existing precedent "must have placed the ... constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. at 551.

Plaintiff argues that Dr. Stieve is not entitled to qualified immunity because

---

[5] The Supreme Court recently noted that it has not yet determined whether the decision of any lower court can clearly establish the law for qualified immunity purposes. *See District of Columbia v. Wesby*, 138 S. Ct. at 591 n.8 ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity.").

"from at least 1976 that a prisoner has an Eighth Amendment right not to have prison authorities be deliberately indifferent to his serious medical needs."  (Plf. Brief., 22, PageID.2465) (citing *Estelle v. Gamble*, 429 U.S. at 104).   This argument lacks merit because, under the second prong of the qualified immunity analysis, "the clearly established right must be defined with specificity."   *City of Escondido, Cal. v. Emmons*, 139 S. Ct. at 503.   " 'The Court has repeatedly told [lower] courts . . . not to define clearly established rights at a high level of generality.' "  *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)).

In *Estelle v. Gamble*, after clarifying that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," the Court held that prisoner Gamble's complaint failed to state an Eighth Amendment claim against the treating physician and director of the medical department when he alleged that "more should have been done by way of diagnosis and treatment, and suggest[ed] a number of options that were not pursued."   429 U.S. at 106-07.   The Court did not address any Eighth Amendment claim based on alleged "bottlenecking" the HCV treatment to one prison and a limited number of prisoners.   The Court's decision in *Estelle v. Gamble* did not clearly establish the right plaintiff claims.

The other Supreme Court decisions invoked by plaintiff, *Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*) and *Helling v. McKinney*, 509 U.S. 25 (1993), did not clearly establish the right that he claims.   In *Erickson*, the plaintiff alleged that prison officials had removed him from a HCV treatment program in violation of a

treatment protocol.   Plaintiff alleged that a missing syringe had been found in a communal trash can and modified in a manner suggesting that it had been used for injection of illegal drugs.   Prison officials, disbelieving prisoner Erickson's claim not to have taken the syringe, found that his conduct violated prison rules and removed him from the treatment program for approximately eighteen months.   Prisoner Erickson alleged that discontinuing treatment was endangering his life and causing irreparable liver damage.   The Supreme Court held that plaintiff had alleged enough facts to state an Eighth Amendment claim under the "liberal pleading standards set forth by Rule 8(a)(2)."   551 U.S. at 94.   Plaintiff's claim against Dr. Stieve is not based on termination of HCV treatment based on an alleged violation prison rule.

In *Helling*, the Supreme Court held that a prisoner stated an Eighth Amendment claim when he alleged that his involuntary exposure to environmental tobacco smoke (ETS) posed an unreasonable risk of serious damage to his future health.   509 U.S. at 35.   The Court noted the very high evidentiary burden that the plaintiff faced on remand in proving his risk of future injury based on conditions of his confinement.   The objective component of an Eighth Amendment claim requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS.   It also requires the court to assess whether society considers the risk that the prisoner complains of "to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.   In other words, the prisoner

-20-

must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* at 36.   The subjective component also includes consideration of "the realities of prison administration." *Id.* at 37.   This case does not involve any involuntary ETS exposure issue.   Plaintiff did not present evidence that monitoring his condition while awaiting a more effective HCV treatment was a risk that was so grave that it violated contemporary standards of decency to expose anyone unwillingly to such a risk.   "Plaintiff was spared a lengthy treatment process with a much lower likelihood of success, and was in no danger while he waited for the treatment that ultimately cured him."   (3/30/18 Op. & Order, 5, ECF No. 148, PageID.2037).   *Helling* did not clearly establish the right that plaintiff claims.

Plaintiff also invokes the Seventh Circuit's decision in *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011).   (Plf. Brief, 22-23, PageID.2465-66).   I find that *Roe v. Elyea* did not clearly establish the Eighth Amendment right that plaintiff claims defendant violated.

In *Roe v. Elyea*, four Illinois Department of Corrections (IDOC) prisoners sued the IDOC's medical director claiming violations of their Eighth Amendment rights. The plaintiffs had been near their prison release date and alleged that they had been denied HCV treatment under Dr. Elyea's protocol that "categorically required that *all* candidates for antiviral therapy . . . have at least two years left on their sentence." *Id.* at 859.   "[I]nmates were denied further testing and treatment for HCV infection *categorically* based on the expected length of their continued incarceration." *Id.* at

-21-

862.   Dr. Elyea testified that there may not have been any medical foundation for the two-year time limit and that it could have been a matter of administrative convenience "to keep it simple for folks."   *Id.* at 860, 863.   The Seventh Circuit affirmed the district court's denial of qualified immunity because the evidence permitted a jury to infer that Dr. Elyea's policy prevented treating physicians from exercising any professional judgment as to whether to commence HCV treatment for inmates who could have completed their treatment during the remaining period of their incarceration.   *Id.* at 861.

The Sixth Circuit has never cited *Roe v. Elyea*, much less adopted its holding. Further, plaintiff's claim against Dr. Stieve is not rooted in a categorical exclusion from treatment based on the short length of his remaining sentence.   Plaintiff is serving life sentences.   He received dual therapy treatment and his medical condition was monitored while he awaited treatment with the medication that cured his HCV.[6]

On March 8, 2018, this Court found that the other MDOC defendants were entitled to qualified immunity and dismissal of plaintiff's claims under Rule 12(b)(6) because in this rapidly evolving area of HCV treatment, there was no clearly established precedent regarding how large a State's treatment program must be, how many prison facilities must be involved, how quickly after the FDA approves a new

---

[6] Plaintiff cites several district court cases (Plf. Brief, 20-23, PageID.2465-66), none of which warrant discussion because they did not clearly establish the right that plaintiff claims.

form of treatment it must be implemented in the prison setting.    (3/30/18 Op. & Order, 8-9, ECF No. 148, PageID.2040-41).    The Court's finding should be the same on the broader summary judgment record because Dr. Stieve's last date employed by the MDOC was July 17, 2014, and the law was not clearly established on or before that date.    *See, e.g.*, *Riggleman v. Clarke*, No. 5:17-cv-63, 2019 WL 1867451, at *6-7 (W.D. Va. Apr. 25, 2019); *Henderson v. Tanner*, 2019 WL 885914, at *10-12; *Redden v. Ballard*, No. 2:17-cv-1549, 2018 WL 4327288, at *8 (S.D. W. Va. July 17, 2018); *Cunningham v. Sessions*, No. 9:16-cv-1292, 2017 WL 2377838, at *4 (D. S.C. May 31, 2017).    Plaintiff did not carry his burden of demonstrating that existing precedent placed the constitutional question beyond debate at the time defendant acted.    Accordingly, I find that Dr. Stieve is entitled to qualified immunity.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Court deny plaintiff's Rule 56(d) motion (ECF No. 209).   I further recommend that the Court grant Dr. Stieve's motion for summary judgment (ECF No. 200) and enter judgment in his favor on plaintiff's claim.


Dated: June 18, 2019                     /s/   Phillip J. Green
                                         PHILLIP J. GREEN
                                         United States Magistrate Judge


## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).   All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a waiver of any further right of appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).